UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DAVID A. FORSBERG, M.D., | ) |
| Plaintiff, | ) |
| v. | ) No.: 3:22-CV-58-KAC-DCP |
| KNOXVILLE COMPREHENSIVE, BREAST CENTER, PLLC, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**
**REMITTING DAMAGES AWARD AND AMENDING JUDGMENT**

This matter is before the Court on Defendant Knoxville Comprehensive Breast Center's "Motion to Alter or Amend Judgment" under Federal Rule of Civil Procedure 59(e) [Doc. 93]. For the foregoing reasons, the Court grants Defendant's Motion in part and denies it in part.

**I.   Background**

On February 14, 2022, Plaintiff David A. Forsberg, M.D.; sued Defendant for violations of federal and state law, invoking this Court's federal question jurisdiction and supplemental jurisdiction over his state claims [*See* Doc. 1]. Among other things, Plaintiff asserted that Defendant libeled him and placed him in a false light by stating in a February 15, 2021 email that Plaintiff was the subject of an "ongoing investigation" because he allegedly engaged in "inappropriate" and "possibly illegal conduct both as [an] employee[] of [Defendant] and as [a] physician[]" [Doc. 126-1 at 4 (citing Pl. Tr. Ex. 29); *see also* Doc. 60 at 17-18]. Plaintiff also alleged that Defendant violated the Federal Stored Communications Act 18 U.S.C. § 2701, *et seq.* ("SCA") [Doc. 1].

The Court held a bifurcated trial with the jury assessing (1) liability, compensatory damages, and any entitlement to punitive damages in Phase One and (2) the amount of punitive

damages in Phase Two. Prior to the conclusion of Phase One, the Parties attempted to submit legally accurate and sufficient proposed jury instructions. While discussing jury instructions, Defendant expressed concern that Plaintiff may obtain duplicative recovery on several of his claims because the damages for those claims overlapped [Doc. 122 at 139]. The Court indicated that proper instructions would identify each individual claim and require the jury to individually consider Defendant's liability and any damages for each claim [*Id.*]. Ultimately, the Court instructed the Jury that it must consider each of Plaintiff's claims individually and separately determine Defendant's liability and the amount of any damages for each claim [*See* Doc. 103 at 93-120].

At the conclusion of Phase One, the Jury found Defendant liable for libel, false light, and four (4) violations of the SCA [*See* Doc. 72]. The Jury awarded Plaintiff $10,000 in compensatory damages for his libel claim and $10,000 in compensatory damages for his false light claim [*Id.*]. The Jury awarded Plaintiff $0 in actual damages on his SCA claim [*Id.* at 4]. But it determined that Defendant committed four (4) violations of the SCA [*Id.*]. The Jury also separately determined that Plaintiff was entitled to punitive damages on his libel, false light, and SCA claims [*Id.*].

Trial proceeded to Phase Two. At Phase Two, the Jury awarded Plaintiff $125,000 in punitive damages for his libel claim and $125,000 in punitive damages for his false light claim [Doc. 75]. The jury separately awarded Plaintiff $125,000 in punitive damages for his SCA claim [*Id.*]. The Clerk entered judgment consistent with the Jury's verdict [*See* Doc. 88]. *See also* Fed. R. Civ. P. 58(b).

Defendant subsequently filed the instant Motion under Federal Rule of Civil Procedure 59(e), arguing that: (1) the Court should strike Plaintiff's libel award because Plaintiff allegedly failed to establish the elements of the claim; (2) the Jury's award for libel and false light constitutes

2

duplicative recovery for the same injury; and (3) the Jury's punitive damages award for Plaintiff's libel, false light, and SCA claims are each excessive in violation of the Due Process Clause of the Fifth and Fourteenth Amendments [Doc. 93]. Plaintiff opposed Defendant's Motion [Doc. 126-1], and Defendant replied [Doc. 130].

## II. <u>Analysis</u>

Rule 59(e) "covers a broad range of motions." *See* Charles Wright, Arthur Miller, and Mary Kane, *11 Fed. Prac. Civ. § 2810.1* (3d ed. 2024). Because the "specific grounds for a motion to amend or alter are not listed in the rule," "district court[s] enjoy[] considerable discretion" in considering a Rule 59(e) motion. *Id.* There are generally "four basic grounds upon which" a court may grant a Rule 59(e) motion: (1) "to correct manifest errors of law or fact upon which the judgment is based;" (2) to allow a party to present "newly discovered or previously unavailable evidence;" (3) "to prevent manifest injustice;" or (4) to reflect "an intervening change in controlling law." *Id.* (footnotes omitted); *see also Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009). But Rule 59(e) "may not be used to relitigate old matters, or to raise arguments" that a party could have raised "prior to the entry of judgment." *See* Wright, Miller, and Kane, *11 Fed. Prac. Civ. § 2810.1*; *see also Moore v. Coffee Cnty.*, 402 F. App'x 107, 109 (6th Cir. 2010).

### A. **Defendant's Request To Strike Plaintiff's Libel Award In Total Fails.**

Defendant argues that the Court should strike Plaintiff's libel award in total because Plaintiff "failed to establish essential elements of a libel" [Doc. 93 at 1]. The Court denies this request. Defendant attempts to (1) relitigate its prior Rule 50 motion, repeating arguments previously raised, and (2) raise new arguments it could have raised earlier but failed to [*See* Doc. 94 at 3-6]. Specifically, Defendant argues that the libelous February 15 email was

3

purportedly "too vague and ambiguous," "lack[ed] any precision or specificity," and "cannot be evaluated for its truthfulness" because it amounts to opinion, preventing the Jury's determination that the email was libelous [*Id.*]. But none of these arguments are properly raised in a Rule 59(e) motion. And no action is needed to correct any manifest error of law or fact or to prevent a "manifest injustice." Accordingly, the Court denies Defendant's request.

> **B.  The Jury's Damages Award For Plaintiff's Libel And False Light Claim Constitutes Double Recovery.**

Because the Jury's damages award for both libel and false light constitute double recovery, the Court amends the judgment to strike the damages award for false light. As an initial matter, Tennessee law applies to the Jury's damages award on Plaintiff's libel and false light claims. Although neither Party addressed the issue, a federal court "exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) (citation omitted); *see also Jones v. City of Elyria*, 947 F.3d 905, 912 (6th Cir. 2020). "[S]tate law governs substantive issues and federal law governs procedural issues." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 613 (6th Cir. 2024) (citation omitted). And "[t]he law of tort liability and damages is substantive, not procedural." *Losey v. N. Am. Phillips Consumer Elecs. Corp.*, 792 F.2d 58, 62 (6th Cir. 1986) (citations omitted). Supplemental jurisdiction permitted the Court to hear Plaintiff's Tennessee libel and false light tort claims [*See* Doc. 1 ¶ 3]. *See* 28 U.S.C. § 1367(a). The Court therefore applies Tennessee law to determine whether the Jury's damages award for libel and false light constitute double recovery.

Under Tennessee law, a party may not obtain "duplicative or overlapping" recovery for a single injury. *Am.'s Collectibles Network, Inc., v. Sterling Com., Inc.*, 767 F. App'x 584, 587 (6th Cir. 2019) (citing *Hickson Corp. v. Norfolk S. Ry.*, 260 F.3d 599, 567-68 (6th Cir. 2001)) (citation

4

omitted). "It is well settled under Tennessee law that a party cannot be compensated for the same injury twice." *Hickson Corp.*, 260 F.3d at 567 (citations omitted). No matter the "nature or number of legal theories advanced by a party," he "is not entitled to more than a single recovery" for an injury. *Id.* If a jury makes a duplicative or overlapping award, a plaintiff must "choose one of the claims upon which to realize its maximum recovery." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909 (Tenn. 1999).

Here, the Jury's awards for libel and false light are duplicative and overlapping. Plaintiff based his libel and false light claims on the same exact injury—sending the February 15 email [*See* Doc. 60 at 17 ("This first libel claim is due to Defendant defaming . . . [Plaintiff] in an email dated February 15"),[1] 18 ("Defendant placed [Plaintiff] in a false light in the email dated February 15"); *see also* Docs. 122 at 131-40; 103 at 36]. And the damages Plaintiff sought for that injury overlap [*See* Doc. 103 at 113, 116 (seeking damages for economic loss, reputational harm, emotional distress, humiliation, and embarrassment)]. The law permitted Plaintiff to advance two legal theories to recover for his injury, but once the Jury made a duplicative and overlapping award, he must elect one legal theory. *See Concrete Spaces, Inc.*, 2 S.W.3d at 909. Plaintiff elected to recovery on his libel theory [Doc. 126-1 at 15]. Therefore, the Court strikes the Jury's award of damages on Plaintiff's false light theory.

Plaintiff's arguments against this conclusion fail. **First**, Plaintiff argues that Defendant "waived" its double recovery argument by allegedly failing to object to the jury instructions and that, in any event, "it is reasonable to conclude that the jury allocated a total of $20,000 in compensatory damages and $250,000 in punitive damages" for Plaintiff's injury [Doc. 126-1 at 8,

---

[1] At Plaintiff's request, the Court dismissed his "second libel claim" at trial [*See* Docs. 16 at 17; 67 (dismissing libel claim "predicated on communications related to COBRA benefits")].

5

12]. As an initial matter, Defendant *did* raise a concern about the potential for duplicative recovery for libel and false light [*See* Doc. 122 at 139]. This necessitated, and resulted in, tailored, claim-specific jury instructions and claim-specific verdict forms [*See id.*; Docs. 70, 72, 74, 75]. Those verdict forms allow the Court to understand the Jury's findings.

Considering the verdict forms, Plaintiff argues that the Court should ignore the specificity of the Jury's findings, reflected in the verdict forms, and instead presume that the jury meant to award a total of $20,000 in compensatory damages and $250,000 in punitive damages for his injury caused by sending the February 15 email [*See* Doc. 126-1 at 12-13]. The verdict forms themselves, which identified specific damages for each claim, bely that argument [*See* Docs. 72, 75]. And the cases Plaintiff relies on are distinguishable if not inapposite [*See* Doc. 126-1 at 12-13].

Plaintiff principally relies on *Johnson v. Howard*[2] and a case it relied on, *Gentile v. Cnty. of Suffolk*[3]. In *Johnson*—an unpublished Sixth Circuit per curiam opinion on plain error review—the court stated that the record "could be construed to eliminate the possibility of double recovery" if the court "assume[d]" that the jury merely divided a total damages award between separate "viable causes of action." 24 F. App'x at 485. The court noted that its reading of the record to support the assumption was "admittedly strained." *Id.* at 486. And in *Gentile*, the Second Circuit concluded that there was evidence in the record indicting that the jury intended "to award a total of $150,000" in damages divided among plaintiffs' claims. 926 F.2d at 153-54.

In this case, however, the record does not support such an inference or assumption. The Jury specifically found an amount of damages for Plaintiff's libel claim and a separate amount of damages for Plaintiff's false light claim [*See* Docs. 72 at 3, 4; 75]. In contrast to *Johnson* and

---

[2] 24 F. App'x 480 (6th Cir. 2001).
[3] 926 F.2d 142 (2d. Cir. 1991).

6

*Gentile*, the verdict forms here did not permit the Jury to determine an aggregate award. Instead the Jury's award was specific as to each claim. More fundamentally, neither *Johnson* nor *Gentile* addressed Tennessee's law prohibiting double recovery.

**Second**, Plaintiff contends that "it cannot be determined with any degree of certainty that the jury's verdict was based on precisely the same statements and/or identical statement made by the defendant" [Doc. 126-1 at 11]. But Plaintiff is bound by his own theory of the case espoused in the Final Pretrial Order [*See* Doc. 60]. Plaintiff's libel claim was based on Defendant sending the February 15 email, as was his false light claim [*See* Doc. 60 at 17,[4] 18]. The Jury made separate findings related to each of those claims. And the Jury awarded damages for the same conduct and injury under different and overlapping legal theories. That is duplicative recovery, through and through.

**Finally**, Plaintiff requests, in the alternative, that if the Court strikes the Jury's compensatory damages award on his false light claim, the Court should preserve the Jury's punitive damages award on the false light claim "because the purpose of punitive damages is to punish and deter Defendant" [Doc. 126-1 at 15]. This policy argument is not supported by the law. Tennessee law prevents recovering twice for the same injury, not merely double recovery for compensatory damages. Accordingly, it is appropriate for the Court to strike the Jury's award of compensatory and punitive damages for Plaintiff's false light claim.

    **C.**    **The Jury's Punitive Damages Awards For Plaintiff's Libel And Stored Communication Act Claims Violate The Fifth And Fourteenth Amendments.**

The Due Process Clause of the Fifth and Fourteenth Amendments "prohibit[] the imposition of grossly excessive or arbitrary punishments." *See Kidis v. Reid*, 976 F.3d 708, 715-

---

[4] The Court dismissed Plaintiff's other libel claim at trial [*See* Doc. 67].

7

16 (6th Cir. 2020) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). To determine whether a punitive damages award comports with due process, the Court follows "three guideposts." *Id.*

**First**, the Court considers the "degree of reprehensibility of the defendant's misconduct." *Id.* Reprehensibility is the "most important indicium of the reasonableness of a punitive damages award." *See State Farm*, 538 U.S. at 426. In assessing reprehensibility, the Court considers whether the (1) "harm was physical rather than purely economic," (2) "tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others," (3) "conduct involved repeated actions or was an isolated incident," and (4) harm resulted from "intentional malice, trickery, or deceit, or mere accident." *Kidis*, 976 F.3d at 716 (quotations and citations omitted). "[W]here few, if any, of the indicia of reprehensibility are present, the defendant's conduct is not considered sufficiently 'reprehensible,' for purposes of due process, to support any award." *Id.*; *see also State Farm*, 538 U.S. at 419.

**Second**, the Court assesses the "disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." *Id.* While there is no "bright-line ratio which a punitive damages award cannot exceed," an award of punitive damages must be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages" he recovers. *See State Farm*, 538 U.S. at 425-26. Even where "many or all of the reprehensibility factors are satisfied," an "award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Kidis*, 976 F.3d at 715 (quotation omitted). And in cases involving "relatively low" compensatory damages awards, a 9-to-1 ratio "between punitive and compensatory damages is likely the outer limit that due process will permit," absent a "particularly egregious act." *Id.*

8

***Third***, courts evaluate the "difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 715. "[T]he existence of a criminal penalty does have bearing on the seriousness with which" a state or the United States "views the wrongful act," but potential criminal penalties have "less utility" when determining whether "the dollar amount of an award" satisfies due process. *See State Farm*, 538 U.S. at 428. The Supreme Court has cautioned that a court must take "[g]reat care . . . to avoid us[ing] the civil process to assess criminal penalties" that may only be imposed "after the heightened protections of a criminal trial," including "higher standards of proof." *Id.* Assessing each of these guideposts, the punitive damages awards for each of Plaintiff's libel and SCA claims violates due process.

    i.    **Libel Award**

Starting with the libel award, the degree of reprehensibility is slight. The harm caused by Defendant publishing the February 15 email was purely economic, not physical. Defendant's conduct lacked an "indifference to or a reckless disregard of the health or safety of others." *See Kidis*, 976 F.3d at 716. And the record shows one isolated incident of libel on February 15. It appears that the Jury concluded that Defendant acted with intentional malice [*See* Docs. 103 at 114, 72 at 3, 75 at 1]. But that alone does not render Defendant's conduct "sufficiently reprehensible" to support the Jury's punitive damages award. *See Kidis*, 976 F.3d at 716.

Plaintiff argues for an increased degree of reprehensibility based on his reading of other emails and facts that were elicited at trial in support of other claims [*See* Doc. 126-1 at 20-23]. But those emails and facts, viewed objectively, do not move the needle. For example, Plaintiff asserts that Defendant's libelous conduct "was repeated and ongoing" [Doc. 126-1 at 20]. In support, Plaintiff alleges that Defendant "defamed" another physician mentioned in the February 15 email [*Id.*]. Plaintiff then discusses "various other emails" that he believes show a

9

Case 3:22-cv-00058-KAC-DCP   Document 132   Filed 01/21/25   Page 9 of 13
PageID #: 4141

repeated and ongoing pattern of libel by Defendant [*Id.* at 21]. But the proof at trial did not show that these emails amount to libel. Plaintiff then attempts to argue that "Defendant was motivated to commit these torts in response to Plaintiff simply trying to stop fraud being perpetrated on vulnerable patients" [*Id.* at 22]. But the Jury rejected the theory that Defendant terminated Plaintiff on March 12, 2021 in retaliation for raising claims of fraud under the False Claims Act [Docs. 72 at 1; 60 at 5]. And even considering the rest of the record, it would be hard to square that finding with Plaintiff's assertion that Defendant sent the February 15 email in retaliation for Plaintiff reporting fraud.

Turning to the disparity between compensatory and punitive damages, the current 12.5-to-1 ratio is not "reasonable and proportionate." *See State Farm*, 538 U.S. at 425-26. Given the slight degree of reprehensibility, the 12.5-to-1 ratio crosses the "line of constitutional impropriety." *See Kidis*, 76 F.3d at 716. And even with the "relatively low" $10,000 compensatory damages award, the current ratio exceeds the 9-to-1 "outer limit" of due process. *See id.* This is especially true because Defendant did not commit a "particularly egregious act" that could justify a ratio beyond single digits. *See id.* (collecting cases involving significantly excessive force by law enforcement officers).

At the third guidepost, the Parties focus on comparing the "punitive damages award to those in comparable cases." *See Kidis*, 976 F.3d at 717. This makes sense because there are no readily identifiable analogous civil penalties. Plaintiff identifies no comparable libel case supporting a 12.5-to-1 punitive damages award ratio [*See* Doc. 126-1 at 24-25 (citing 42 U.S.C. § 1983 cases, Title VII cases, contract cases, property nuisance cases, wrongful death cases, and a

Florida state appellate case)].⁵  Defendant cites several Tennessee libel cases where the average punitive damages ratio was approximately 2-to-1 [*See* Doc. 94 at 12-13].

Considering the record and assessing all three guideposts, the Court concludes that a punitive damages award of $40,000 for Plaintiff's libel claim properly accounts for Defendant's wrongful conduct while satisfying due process.  A $40,000 award reflects Defendant's slight degree of reprehensibility and the Jury's conclusion that Defendant acted with intentional malice.  The 4-to-1 ratio is double the average 2-to-1 ratio found in similar Tennessee libel cases, but that is warranted due to the "relatively low" $10,000 compensatory damages award on the libel claim. *See Kidis*, 76 F.3d at 716.  And the record does not reveal a "particularly egregious act" justifying a greater award. *See id.*  Accordingly, the Court reduces the Jury's punitive damages award for the libel claim to $40,000.

        **ii.**    **SCA Claim**

Turning to Plaintiff's SCA claim, the reprehensibility factors are mixed.  Defendant caused no physical harm to Plaintiff.  In fact, the Jury found that Plaintiff suffered no actual harm at all [*See* Doc. 72 at 4].  And Defendant's unlawful conduct did not evidence any disregard for the health or safety of others.  But the Jury found that Defendant committed four (4) distinct violations of the SCA, indicating that Defendant's unlawful conduct was not an isolated incident.  The Jury's

---

⁵ Plaintiff insists that "[b]ased on Defendant's financial condition, the punitive damages" awarded "were not excessive" [Doc. 126-1 at 24].  But Defendant's financial condition does not determine its entitlement to due process. *See BMW of N. Am. v. Gore*, 517 U.S. 559, 585 (1999) ("[t]he fact that BMW is a large corporation rather than an impecunious individual does not dimmish its entitlement to" due process).

verdict on Plaintiff's SCA claim, too, suggests a finding of willfulness or intent [*See* Doc. 103 at 117-8]. Therefore, the reprehensibility factors on this claim are split.

At the second guidepost, assessing the proper ratio is challenging. The Jury awarded Plaintiff no actual damages, making the mathematical calculation of a ratio "undefined." Even without a defined ratio, a $125,000 punitive damages award with no actual damages is neither "reasonable" nor "proportionate to the amount of harm to the plaintiff." *See State Farm*, 538 U.S. at 425-26. Assuming for purposes of the second guidepost that, as Defendant posits, there was hypothetically $4,000 in actual damages, the punitive damages ratio would exceed 31-to-1 [*See* Doc. 94 at 15]. That ratio would be more than three (3) times the "outer limit" of due process. *See Kidis*, 76 F.3d at 716. And other than the repetition of the violation, there is no evidence of a particularly egregious act. *See id.* at 717-18 (collecting cases).

Last, the Jury's punitive damages award for the SCA claim substantially exceeds awards in comparable cases. Plaintiff cites comparable SCA cases applying a 5-to-1 ratio [*See* Doc. 126-1 at 29 n. 30]. Assuming $4,000 in actual damages for purposes of calculation, as Defendant does, applying a 5-to-1 ratio would yield a punitive damages award of $20,000. Both Parties argue that the potential criminal punishments for a violation of the SCA significantly impact the appropriate award of punitive damages here [*See* Docs. 94 at 15-16, 126-1 at 31]. But potential criminal penalties have "less utility" in this case because the Jury only found the SCA violations by a preponderance of the evidence—not the significantly higher criminal standard of proof beyond a reasonable doubt. *See State Farm*, 538 U.S. at 428.

Considering the record and assessing all three guideposts, the Court concludes that a punitive damages award of $20,000 for Plaintiff's SCA claim properly accounts for the reprehensibility of Defendant's conduct while comporting with due process. The larger relative

penalty reflects the willfulness or intentionality of Defendant's conduct and the repeat nature while recognizing that the Jury concluded Plaintiff had no actual damages from the violations. *See Kidis*, 976 F.3d at 716.  A 5-to-1 presumed ratio is comfortably within recent precedential ratios, given the lack of compensatory damages and related challenges in even calculating a defined ratio.  And the 5-to-1 presumed ratio is in line with damages awards in comparable SCA cases.  Accordingly, the Court reduces the Jury's punitive damages award for the SCA violations to $20,000.

### III. Conclusion

For the above reasons, the Court **GRANTS in PART** and **DENIES in PART** Defendant Knoxville Comprehensive Breast Center's "Motion to Alter or Amend Judgment" [Doc. 93]. Because amendment of the judgment is required to prevent a manifest Constitutional injustice, *see* Fed. R. Civ. P. 59, the Court **AMENDS** the Judgment [Doc. 88] in this case as follows:

(1) Plaintiff, David A. Forsberg, M.D., is awarded $10,000 in compensatory damages and $40,000 in punitive damages on his libel claim;

(2) Plaintiff, David A. Forsberg, M.D., is awarded $0 in compensatory damages and $0 in punitive damages on his false light claim; and

(3) Plaintiff, David A. Forsberg, M.D., is awarded $20,000 in punitive damages on his Federal Stored Communications Act claim.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge